(173 App. Div. 577)

### GOODRICH v. ROCHESTER TRUST & SAFE DEPOSIT CO. et al.

(Supreme Court, Appellate Division, Fourth Department. June 15, 1916.)

1. TAXATION ⬯891—TRANSFER TAX—LIABILITY OF EXECUTOR TO STATE.
      A clause of a will, directing that all legacy, transfer, and succession taxes be paid out of the body of testator's estate before any division, did not put upon the New York executor any other or greater liability to the state of Michigan, where testator owned property, than if the clause had been altogether omitted; its purpose being to indicate out of what fund such taxes should be paid, in order that legacies should be paid in full without deduction for such taxes.
      [Ed. Note.—For other cases, see Taxation, Cent. Dig. § 1712; Dec. Dig. ⬯891.]

2. TAXATION ⬯890—TRANSFER TAX—EXTRATERRITORIAL OPERATION.
      The transfer tax law of Michigan (How. Ann. St. § 2024), providing that executors and trustees of each estate transferred shall be personally liable for the tax until payment, cannot operate beyond the borders of Michigan to fix a personal liability on a New York executor.
      [Ed. Note.—For other cases, see Taxation, Cent. Dig. § 1711; Dec. Dig. ⬯890.]

3. SUBROGATION ⬯10(3)—TRANSFER TAX—PAYMENT BY ADMINISTRATOR.
      A Michigan administrator with the will annexed for the estate of a New York decedent, who paid a transfer tax to the state of Michigan, became subrogated to such rights as the state had to pursue the proceeds of the property on which the tax was levied into New York and to collect the tax therefrom.
      [Ed. Note.—For other cases, see Subrogation, Cent. Dig. § 32; Dec. Dig. ⬯10(3).]

4. LIMITATION OF ACTIONS ⬯2(1)—STATUTE OF LIMITATIONS—ACTIONS TO RECOVER AND COLLECT TRANSFER TAX.
      The Michigan statute of limitations does not apply to an action in the courts of New York, in behalf of the state of Michigan, to collect trans-

⬯For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

fer tax, or to an action in the courts of New York, by the Michigan administrator with the will annexed of the estate of a New York decedent, against the New York executor and legatees, to recover the amount of the Michigan transfer tax paid out of his own funds by the Michigan administrator, who had remitted to New York the property on which the tax was assessed.

[Ed. Note.—For other cases, see Limitation of Actions, Cent. Dig. §§ 4, 6; Dec. Dig. &wkey;2(1).]

Appeals from Special Term, Monroe County.

Action by James S. Goodrich against the Rochester Trust & Safe Deposit Company, a corporation, and as executor and trustee under the last will and testament of James Madison Seely, deceased, and others. From a judgment that plaintiff recover of defendant Trust & Safe Deposit Company, and that the latter recover from defendants Maud Seely, James M. Seely, Jr., and Flora Seely Salmon, the named defendants appeal separately. Judgment modified and affirmed.

Argued before KRUSE, P. J., and FOOTE, LAMBERT, MERRELL and DE ANGELIS, JJ.

James S. Havens, Asher P. Whipple, and Havens & Havens, all of Rochester, for appellant Rochester Trust & Safe Deposit Co.

George P. Decker and Decker & Menzie, all of Rochester, for other appellants.

William MacFarlane, of Rochester, for respondent.

FOOTE, J. James M. Seely, a resident of the city of Rochester, N. Y., died on April 4, 1900, leaving a last will and testament which was admitted to probate by the surrogate of Monroe county, and letters testamentary were issued to the defendant Rochester Trust & Safe Deposit Company, named as executor in the will, and also trustee of certain trusts which it created. Among the assets of the estate were about $80,000 in bonds and mortgages upon real property in the city of Detroit, Mich. On February 15, 1901, plaintiff was appointed administrator with the will annexed in Wayne county, Mich. The bonds and mortgages were at the time of the death of Mr. Seely in his possession at Rochester, and came into the possession of his executor, the Rochester Trust & Safe Deposit Company, at the time letters testamentary were issued to it on May 4, 1900. These mortgages were, from time to time as they became due and payable, transmitted by the Rochester Trust & Safe Deposit Company to plaintiff at Detroit, Mich., where he resided, and were by him collected as such administrator with the will annexed, and discharges of mortgage executed by him, whereupon, after deducting his fees and expenses, he immediately remitted the proceeds of each mortgage so collected to defendant Rochester Trust & Safe Deposit Company as executor. The last of said mortgages was so collected and the proceeds remitted on February 2, 1911.

Shortly thereafter plaintiff applied to the probate court of Wayne county, Mich., to be discharged as administrator; he having administered all the assets of the estate in the state of Michigan. At that time he was informed for the first time that a transfer tax upon that part of the estate which he had so handled was payable to the state of Michigan. He shortly thereafter took the matter up with the Roches-

ter Trust & Safe Deposit Company, when he learned that that company had, on June 6, 1910, been discharged as executor by the surrogate of Monroe county, it having duly accounted as such, and that it had distributed to the legatees named in the will all of the estate, except that it had retained as trustee under the terms of the will the shares of the defendant James M. Seely, Jr., Maud Seely, and Flora Seely Salmon, children of the testator, under the trusts created by the will, to be further administered by the company as testamentary trustee; the shares of two of the children of testator having before that time been paid to them in accordance with the terms of the will. Subsequently, and before the commencement of this action, the share of another child, having become due and payable and been demanded, was paid over, leaving the shares of two of the children, Maud Seely and James M. Seely, Jr., still in the hands of the company as testamentary trustee. Subsequently, plaintiff having been threatened with proceedings on behalf of the state of Michigan to compel him to pay the transfer tax, he, on January 25, 1913, petitioned the probate court of Michigan for permission to pay the original tax of $595, without interest or a penalty. This was denied by an order made on February 7, 1913, which directed plaintiff, as administrator, to pay the tax, with interest at 8 per cent., which the law of that state requires, and plaintiff did on February 10, 1913, pay the tax and interest out of his own funds, amounting to $1,206.80, and in February, 1914, he began this action against the trust company alone, both individually and as executor and trustee under the will, to recover the amount so paid. Subsequently, and before the trial, the children of the testator, except the son, Joseph T., who had died, were brought in and made parties defendant.

It has been held by the decision at Special Term that plaintiff is entitled to recover in the first instance from the Rochester Trust & Safe Deposit Company the full amount of the tax paid by him, and that that company is entitled to recover over from each of the four defendants the sum of $305.80; that is, each defendant is adjudged to pay to the trust company one-fifth of the amount the trust company is so adjudged to pay to plaintiff, leaving the trust company without remedy as to the other one-fifth distributed to Joseph T. Seely before his death. The appeals challenge the correctness of this decision.

By the terms of the will:

"All legacy, transfer and succession taxes which may be payable in respect to the bequests and devises in this will contained, I direct to be paid out of the body of my estate and before any division thereof."

The transfer tax statute of the state of Michigan contains this clause:

"Sec. 3. Every such tax * * * shall be and remain a lien upon the property transferred until paid, and the person to whom the property is so transferred and the administrators, executors, and trustees of every estate so transferred, shall be personally liable for such tax until its payment." How. Ann. St. Mich. § 2024.

Judgment has gone against the trust company on the theory that by the terms of the will and of this statute it was charged with the duty of paying this tax. The findings upon which this liability is

predicated are, in substance, that by the terms of the will and the laws of Michigan the trust company, as executor, became primarily liable for the payment of the tax; that the decree of the probate court in Michigan assessing the tax is entitled to full faith and credit, and is conclusive upon the parties to this action; and that upon payment of the tax and interest plaintiff became subrogated to the right of the state of Michigan to enforce the collection of the tax from the defendant trust company.

It appears that before either plaintiff or the defendant trust company had actual notice or knowledge that the transfer tax was or would be due to the state of Michigan the defendant trust company was discharged as executor after serving as such for about nine years, and that when plaintiff first discovered that there would be such a tax defendant trust company then had no funds of the estate in its hands as executor.

[1-3] The decision, therefore, fixes upon the trust company personal liability because of the supposed duty resting upon it, of which it was not, in fact, advised or aware at the time it settled its accounts as executor and obtained its discharge as such. The effect of the decision is that the defendant trust company became personally liable to the state of Michigan for the tax, and that that liability is not only in its representative capacity as executor, but survives and continues as a personal liability after its discharge as executor. This, it seems to us, is a mistaken construction of the will and the Michigan statute. The clause of the will directing the transfer taxes to be paid out of the body of the estate does not, as we think, put upon the executor any other or greater liability to the state than as if the clause had been omitted from the will altogether. Its purpose was to indicate out of what funds of the estate such taxes should be paid, in order that the legacies should be paid in full without any deduction for these taxes. The statute of Michigan could not operate beyond the borders of that state to fix a personal liability upon an executor in this state. City of New York v. McLean, 57 App. Div. 601, 68 N. Y. Supp. 606; Id., 170 N. Y. 374, 63 N. E. 380; Dewey v. Des Moines, 173 U. S. 193, 19 Sup. Ct. 379, 43 L. Ed. 665; Bristol v. Washington County, 177 U. S. 133, 20 Sup. Ct. 585, 44 L. Ed. 701; People v. Union Trust Co., 255 Ill. 168, 99 N. E. 377, Ann. Cas. 1913D, 514. Its application clearly is to executors and administrators of the state of Michigan and not elsewhere. If the defendant trust company came under any personal liability to the state of Michigan, it must, as it seems to us, arise from its having received and distributed the proceeds of the Michigan mortgages upon which that state had by statute imposed a lien for its transfer tax. The statute says that the tax shall be and remain a lien "upon the property transferred," which was, of course, the bonds and mortgages. These, as they became due, were sent by the trust company to the plaintiff in Michigan, and by plaintiff collected from the mortgagor and the proceeds remitted to the trust company.

Did the state's lien upon the mortgages attach to the proceeds, and, if so, did it follow the proceeds beyond the borders of the state? If these questions can be answered in the affirmative, it does not follow

that the trust company in handling those funds and paying them over to their rightful owners would thereby incur a personal liability for the amount of the supposed lien. The lien, if it survived the conversion of the securities into money and its transmission to this state, may follow the fund into the hands of its present owner; but it is difficult to see upon what principle the trust company, as the medium of transmission, would incur a personal liability for the amount of the lien in the absence of any charge of bad faith in acting as such medium for the purpose of defeating the lien or of a statute of this state imposing such liability. No doubt plaintiff became subrogated to such rights as the state of Michigan had to pursue the proceeds of the mortgage into this state and to collect its tax therefrom; but, unless the statute of Michigan can be held to operate beyond its borders, which clearly it cannot, then the state must be limited in its remedy to follow the fund into the hands of its owners.

[4] We think it was correctly held by the learned justice at Special Term that the Michigan statute of limitations does not apply to an action in behalf of the state to collect this tax or to the present action. The Michigan transfer tax statute is the same, in substance, as that of our own state. It undertakes to fix a lien for the transfer tax upon the property transferred, as does our own statute. Our courts should assist in enforcing the Michigan statute in this state, in so far as it may be done consistently with the general principles of law prevailing here. It is just and right that the individual defendants, who have received the proceeds of the Michigan mortgages, should pay the tax due to the state of Michigan. The defendant trust company has in its possession as trustee that part of the proceeds of the mortgages belonging to the defendants Maud Seely and James M. Seely, Jr.

The judgment should be modified, so as to direct a recovery by plaintiff of the sum of $305.80 against each of the following named defendants: Lyman J. Seely, Flora Seely Salmon, Rochester Trust & Safe Deposit Company, as testamentary trustee of Maud Seely, and Rochester Trust & Safe Deposit Company, as testamentary trustee of James M. Seely, Jr., and that the plaintiff have execution therefor, and further modified by striking therefrom the provisions for the recovery by the defendant Rochester Trust & Safe Deposit Company against the defendants James M. Seely, Jr., Lyman J. Seely, and Flora Seely Salmon, and, as so modified, the judgment should be affirmed, with costs of this appeal to defendant trust company against plaintiff. All concur.